UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

CHRISTOPHER BAUMAN, *As Administrator for the Estate of Nicholas Papazassis*,

                                                      **Plaintiff,**

                                                     -against-

THE CITY OF NEW YORK, NEW YORK POLICE DEPARTMENT, POLICE OFFICER JOAN HIDALGO, JOHN OR JANE DOES 1-10 (UNIDENTIFIED MEMBERS OF THE NYPD INVOLVED IN PLAINTIFF'S ARREST AND PROSECUTION),

                                                     **Defendants.**

**OPINION & ORDER**

**15-cv-5695 (NG)(RLM)**

------------------------------------------------------------ x
GERSHON, United States District Judge:

       Plaintiff Christopher Bauman, as administrator for the estate of Nicholas Papazissis,[1] brings claims under 42 U.S.C. § 1983 and New York law against defendants the City of New York ("City"),[2] Police Officer Joan Hidalgo, and John or Jane Does 1-10 for civil rights violations connected to Mr. Papazissis's arrest. Specifically, plaintiff brings the following claims under § 1983: false arrest, excessive force, failure to intervene, denial of the constitutional right to a fair trial, and deliberate indifference to safety/medical needs against Officer Hidalgo, and a *Monell* claim against the City. He also brings the following claims under

---

[1] Mr. Bauman was substituted in as plaintiff for Mr. Papazissis, who died after this lawsuit was filed.

[2] Although plaintiff named the New York Police Department ("NYPD") as a defendant, he did not serve it. This is inconsequential as claims against the NYPD must be brought against the City because the NYPD is a "non-suable agency." *Diomande v. City of New York*, 2021 WL 3472627, at *2 (E.D.N.Y. Aug. 6, 2021).

New York law: false arrest, assault, and battery against Officer Hidalgo and against the City under the theory of *respondeat superior*; and negligent hiring, training, and retention against the City. In addition, defendants interpret plaintiff's complaint as potentially raising a malicious prosecution claim against Officer Hidalgo.

Defendants now move for partial summary judgment under Federal Rule of Civil Procedure ("Rule") 56 on plaintiff's claims of false arrest under both federal and state law, malicious prosecution, denial of the right to a fair trial, failure to intervene, municipal liability under *Monell*, and negligent hiring, training, and retention. Plaintiff did not file any opposition to defendants' motion, and the motion is thus unopposed.

For the reasons stated below, the motion is granted in part and denied in part.

**I.   Factual Background**

The following facts are undisputed.[3]

On July 3, 2014, Diane Bauman called the NYPD and reported that her son, Mr. Papazissis, was trying to break into the back window of her home, located at 29-35 162nd Street in Queens, New York. Ms. Bauman also relayed that her son had tried to strangle her earlier. Defendant Officer Joan Hidalgo responded to the incident.

According to the Domestic Incident Report created by Officer Hidalgo, Ms. Bauman told the officer that Mr. Papazissis had come to her home and demanded her car keys. When Ms. Bauman refused, Mr. Papazissis pushed the door open, hitting her right leg and causing substantial pain. Mr. Papazissis then entered Ms. Bauman's home without permission, using a

---

[3] The facts are taken from defendants' Local Rule 56.1 Statement and the evidence upon which that statement relies. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

ground level window, and immediately started breaking items, including the living room table, lamps, and cups. Officer Hidalgo also wrote that Mr. Papazissis resisted arrest.

Upon his arrest, Officer Hidalgo created an arrest report charging Mr. Papazissis with one count each of Resisting Arrest, N.Y. Penal Law § 205.30; Criminal Trespass in the Second Degree, N.Y. Penal Law § 140.15; Assault in the Third Degree, N.Y. Penal Law § 120.00(1), and Criminal Mischief in the Fourth Degree, N.Y. Penal Law § 145.00(1).

On July 4, 2014, Officer Hidalgo signed a criminal court complaint charging Mr. Papazissis with one count each of Resisting Arrest, N.Y. Penal Law § 205.30; Trespass, N.Y. Penal Law § 140.05; Assault in the Third Degree, N.Y. Penal Law § 120.00(1); Criminal Mischief in the Fourth Degree, N.Y. Penal Law § 145.00(1); and Harassment in the Second Degree, N.Y. Penal Law § 240.26(1). The complaint cited Ms. Bauman as the source of the facts underlying every charge except Resisting Arrest.

Mr. Papazissis was held in police custody for over 15 hours before he was released on his own recognizance.

On September 8, 2014, by motion of the District Attorney, the criminal charges against Mr. Papazissis were dismissed.

## II. Procedural History

Mr. Papazissis initiated this action on October 1, 2015. On February 6, 2017, after the completion of discovery and after defendants had filed a letter requesting a pre-motion conference regarding an anticipated summary judgment motion, plaintiff's counsel notified Magistrate Judge Roanne L. Mann that Mr. Papazissis had died. Judge Mann granted counsel's request to stay all court deadlines for 90 days to replace the plaintiff in the action. Finally, after substantial delay largely caused by the Surrogate's Court, Mr. Bauman was substituted as

plaintiff on September 19, 2019. Judge Mann then granted plaintiff's request to reopen discovery to conduct depositions of three witnesses to replace the testimony of Mr. Papazissis. Plaintiff failed to schedule those depositions.

On February 25, 2020, Judge Mann directed plaintiff, in lieu of presenting the three witnesses for deposition, to serve on defense counsel sworn statements from each of the three witnesses, outlining their anticipated trial testimony and statements in opposition to defendants' planned motion for summary judgment. After granting three requests from plaintiff to extend the deadline to furnish the affidavits, Judge Mann, on May 7, 2020, denied a subsequent request to extend the deadline another 60 days. "Plaintiff's dereliction is, unfortunately, part of a pattern of missed deadlines and other failings in a case that has now been pending for more than 4 1/2 years," the judge wrote. Nonetheless, she adjourned the deadline, *nunc pro tunc* and *sua sponte*, until May 28, 2020 and instructed defendants to renew their request for a pre-motion conference on June 11, 2020.

On June 11, 2020, defendants renewed their request for a pre-motion conference and noted that plaintiff had not provided them with any affidavits. On that same day, plaintiff filed a letter seeking an additional 20 days to submit the affidavits, citing one witness's "family emergencies" and plaintiff's counsel's need to fly abroad for a personal reason. Judge Mann denied this request without prejudice, finding it unsupported by a showing of good cause. Plaintiff did not renew his application, nor did he respond to defendants' letter seeking a pre-motion conference. On June 26, 2020, I instructed plaintiff to respond to the letter by July 1, 2020, and explained that, if he failed to do so, I would issue a briefing schedule. Having not received a response from plaintiff, I set a briefing schedule on July 8, 2020.

Defendants filed their summary judgment motion on ECF on October 29, 2020, the day after their reply was to be due. Defense counsel also submitted a letter stating, in relevant part:

> Pursuant to the briefing schedule set forth by the Court, on September 14, 2020, I served defendants' motion for partial summary judgment on plaintiff's counsel by e-mail. On September 21, 2020, defendants sent plaintiff's counsel an e-mail to confirm that plaintiff's counsel had received all the papers in a timely fashion. On September 28, 2020, plaintiff's counsel e-mailed me back confirming he had received the papers, and informing me that a family member had passed away. Plaintiff asked if I would consent to additional time for him to file his opposition. I replied the same day noting my consent. Plaintiff's counsel did not follow up with proposed dates, or with a draft letter. On October 15, 2020, I sent plaintiff's counsel an e-mail asking if he had filed any application with the Court, to which he did not reply. Therefore, to date, there has been no application seeking additional time to oppose the motion and defendants have not received any opposition papers from plaintiff.

Plaintiff has not filed any response to defense counsel's letter, nor has he sought to file an opposition to defendants' motion. Accordingly, defendants' motion is unopposed.

### III.     Summary Judgment Standard

A court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating a summary judgment motion, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co.*, 373 F.3d at 242; *accord Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014). Thus, "[i]f the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no*

*opposing evidentiary matter is presented.*" *Vt. Teddy Bear Co.*, 373 F.3d at 244 (internal quotation marks omitted).

IV. Discussion

    a. **False Arrest**

Defendants move to dismiss plaintiff's claims of false arrest under both federal and state law. These claims are analyzed under the same standard. *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir. 2003). A plaintiff alleging false arrest "must show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* at 134−35 (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).

An arrest is privileged if a defendant possessed probable cause. *Id.* at 135; *accord Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012), *as amended* (Dec. 4, 2012). "Probable cause is not a particularly demanding standard." *United States v. Scala,* 388 F. Supp. 2d 396, 401 (S.D.N.Y. 2005). A police officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Defendants prevail if there was probable cause to arrest Plaintiff for any single offense." *Ackerson*, 702 F.3d at 20 (internal quotation marks and alteration omitted).

"[P]robable cause exists if a law enforcement officer received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (internal quotation

6

marks and alterations omitted). Here, defendants argue that the statements of Mr. Papazissis's mother, Ms. Bauman, created probable cause to arrest Mr. Papazissis.

As described above, the record indicates that Ms. Bauman called the police and reported that Mr. Papazissis was attempting to break into a window of her home and that he previously had tried to strangle her. When Officer Hidalgo responded to Ms. Bauman's home, Ms. Bauman informed the officer that Mr. Papazissis came to her house, demanded her car keys, and, upon her refusal, pushed the door open, hurting her leg. After entering his mother's home through a window, Mr. Papazissis started breaking furniture and other items. The record contains no reason to doubt the veracity of Ms. Bauman's allegations. Accordingly, Officer Hidalgo had probable cause to arrest Mr. Papazissis for at least one of the several offenses for which he was charged, and plaintiff's false arrest claims must be dismissed. *See Ackerson*, 702 F.3d at 20.

### b. Malicious Prosecution

Defendants ask me to dismiss plaintiff's malicious prosecution claim "[t]o the extent [I] deem[] that plaintiff has properly alleged" such a claim. Memo. of Law at 6. I am doubtful that the complaint alleges a malicious prosecution claim, but I will nonetheless address defendants' arguments. To prevail on a claim of malicious prosecution under § 1983, a plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff; (2) that the defendant lacked probable cause to believe the proceeding could succeed; (3) that the defendant acted with malice; (4) that the prosecution was terminated in the plaintiff's favor; and (5) there was a post-arraignment deprivation of liberty. *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *accord Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021). Defendants argue that plaintiff cannot sustain such a claim for three reasons: there was probable

7

cause for Mr. Papazissis's prosecution; Mr. Papazissis's criminal proceeding did not terminate in his favor, and Officer Hidalgo's actions were not motivated by actual malice.

"The existence of probable cause is a complete defense to a claim of malicious prosecution in New York[.]" *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (internal quotation marks omitted). A court must assess whether there was probable cause "as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). As discussed above, Officer Hidalgo possessed probable cause to arrest Mr. Papazissis based on the statements of his mother. The statements set forth in the criminal court complaint signed by Officer Hidalgo are nearly identical to those contained in the arrest report, and the record contains no evidence of a change in circumstances between his arrest and arraignment. I therefore find that plaintiff cannot pursue a malicious prosecution claim because probable cause existed when the judicial proceeding against Mr. Papazissis commenced.

In the context of a federal malicious prosecution claim, a criminal prosecution has terminated in a plaintiff's favor, "'only when its final disposition is such as to indicate the innocence of the accused.'" *Kee*, 12 F.4th at 163 (quoting *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997)). Here, defendants correctly argue that a dismissal by motion of the District Attorney is insufficient in itself to meet this standard. *See Essani v. Earley*, 2021 WL 1579671, at *9 (E.D.N.Y. Apr. 22, 2021); *Foy v. City of New York*, 2019 WL 3717317, at *7–8 (E.D.N.Y. Aug. 7, 2019); *McKenzie v. City of New York*, 2019 WL 3288267, at *15 (S.D.N.Y. July 22, 2019). Accordingly, plaintiff's inability to establish that Mr. Papazissis's criminal proceeding

8

ended with a favorable termination is another reason why he may not pursue a claim for malicious prosecution.

Finally, as defendants note, the record lacks evidence that Officer Hidalgo acted with malice in pursuing Mr. Papazissis's prosecution—another requirement of a malicious prosecution claim. *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016).

In sum, if plaintiff has raised a malicious prosecution claim, it is dismissed.

### c. Denial of the Constitutional Right to a Fair Trial

Plaintiff alleges that Officer Hidalgo denied Mr. Papazissis's right to a fair trial by forwarding fabricated evidence to prosecutors. "To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Ashley v. City of N.Y.*, 992 F.3d 128, 139 (2d Cir. 2021) (internal quotation marks and alterations omitted). In *McDonough v. Smith*, 588 U.S. ___, 139 S. Ct. 2149, 2156–57 (2019), the Supreme Court, citing *Heck v. Humphrey*, 512 U.S. 477 (1994), held that a plaintiff could not bring a fabricated-evidence claim under § 1983 prior to the favorable termination of his prosecution.

Relying on *McDonough*, defendants assert that plaintiff's fabricated-evidence claim must be dismissed because Mr. Papazissis's criminal prosecution did not terminate favorably. They argue that a favorable termination in the context of a fabricated-evidence claim is the same as that in the context of a malicious-prosecution claim. But the Second Circuit recently rejected such an argument, holding that "*McDonough*'s accrual rule does not import malicious prosecution's favorable-termination requirement onto section 1983 fair-trial claims." *Smalls v. Collins*, 10 F.4th 117, 139 (2d Cir. 2021). Rather, "[w]here the plaintiff asserts a section

9

1983 fair-trial claim based on fabricated evidence, all that is required is that the underlying criminal proceeding be terminated in such a manner that the lawsuit does not impugn an *ongoing* prosecution or *outstanding* conviction." *Id.*

Because Mr. Papazissis's criminal proceeding was dismissed without resulting in a conviction, it "poses no risk of demonstrating the invalidity of any outstanding criminal judgment because there is no such judgment." *See id.* at 140. Therefore, defendants' motion for summary judgment on plaintiff's fabricated-evidence claim, which is based solely on plaintiff's failure to show that his criminal proceeding terminated in his favor, is denied.

### d. Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (internal quotation marks omitted). Here, the record lacks evidence that any officer other than Officer Hidalgo engaged with Mr. Papazissis during the incident at issue, let alone violated his constitutional rights. As such, Officer Hidalgo cannot be held liable for failure to intervene, and this claim is dismissed. *See Olschafskie v. Town of Enfield*, 2017 WL 4286374, at *8 (D. Conn. Sept. 27, 2017).

### e. *Monell* Claim

"[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks and citations omitted). A plaintiff seeking to impose liability on a local government under § 1983 must prove, among other things, that the individuals who violated their federal rights took "'action pursuant to official municipal

10

policy.'" *Id.* (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)); *accord Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019) ("*Monell* liability attaches only where an infringement of constitutional rights is caused by a local government policy."). Official municipal policy includes lawmakers' decisions, "the acts of [a government's] policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61; *accord Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018).

In this case, the record lacks any evidence concerning a municipal policy. While the complaint contains a litany of alleged examples of misconduct by NYPD officers, a "mere allegation[]" in a pleading cannot create a genuine dispute about a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants' motion to dismiss plaintiff's *Monell* claim on summary judgment is granted.

### f. Negligent Hiring, Training, and Retention under State Law

"A claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment." *Colodney v. Continuum Health Partners, Inc.*, 2004 WL 829158, at *8 (S.D.N.Y. Apr. 15, 2004). "When an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence only under a theory of *respondeat superior*, and no claim may proceed against the employer for negligent hiring or retention." *Id.* In the Complaint, plaintiff alleges that "[d]efendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department." Compl., ¶¶ 80, 83; *accord id.*, ¶ 35, 42, 48. Because plaintiff concedes that Officer Hidalgo was acting within the scope of her employment, plaintiff's claim of negligent hiring, training, and retention

11

against the City is dismissed. *See Bryant v. Monroe Cty.*, 2022 WL 119184, at *13–14 (W.D.N.Y. Jan. 12, 2022).

### g. Claims against John and Jane Doe Defendants

Plaintiff named several unidentified members of the NYPD as defendants, none of whom have appeared in this action. Having filed this action in 2015, plaintiff "has had sufficient time and opportunity to identify [John or Jane Does 1-10], and therefore [I] *sua sponte* dismiss[] all claims against them." *See Gutierrez v. New York*, 2021 WL 681238, at *24 (E.D.N.Y. Feb. 22, 2021) (collecting cases).

## V. Conclusion

For the reasons stated above, defendants' motion for partial summary judgment is granted as to plaintiff's claims against Officer Hidalgo for false arrest under both federal and state law, malicious prosecution (to the extent he brings such a claim), and failure to intervene. The motion is also granted as to plaintiff's claims against the City of liability under *Monell* and for negligent hiring, training, and retention. Defendants' motion is denied as to plaintiff's federal claim of the denial of the right to a fair trial against Officer Hidalgo. Finally, all claims against defendants John or Jane Does 1-10 are dismissed.

The claims that remain to be adjudicated are plaintiff's claims under § 1983 of excessive force, denial of the right to a fair trial, and deliberate indifference to safety/medical needs against Officer Hidalgo, as well as his claims under state law of assault and battery against Officer Hidalgo and against the City under the theory of *respondeat superior*.

The parties are directed to prepare a pre-trial order under the supervision of Magistrate Judge Mann.

**SO ORDERED.**

   /S/
**NINA GERSHON**
**United States District Judge**

March 28, 2022
Brooklyn, New York